## BRYAN COLLEGE INTERURBAN RY. CO. v. KROPP. (No. 5876.)

(Court of Civil Appeals of Texas. San Antonio. June 22, 1917. Rehearing Denied Oct. 10, 1917.)

1. BILLS AND NOTES ☞445 — ACTIONS — PREMATURE ACTION—ACCRUAL OF CAUSE.

An action on notes will not be defeated because brought before their maturity, where an amendment after maturity was made, declaring on the notes.

2. RAILROADS ☞159(1)—MECHANICS' LIENS—HOW CREATED.

Under Rev. St. art. 5640, giving laborers and materialmen on railroads a lien, the lien arises when the work is done, and the execution of notes thereafter does not create the lien.

3. CORPORATIONS ☞425(5) — POWERS OF AGENT—ESTOPPEL TO DENY AUTHORITY.

Where a railroad which gave its notes had ratified prior notes made by the vice president and general manager, who had absolute control, contracted for labor, and sometimes paid for it, it was liable and could not deny his authority.

4. RAILROADS ☞159(3)—MECHANICS' LIENS—ENFORCEMENT.

Rev. St. art. 5640, as to mechanics' liens on railroads, is separate and distinct from articles 5621 to 5639, as to general mechanics' liens, and the only requirement is that steps to enforce the lien be taken within 12 months after its creation.

5. RAILROADS ☞174 — MECHANICS' LIENS — DISCHARGE OF LIEN.

Where the contractor for railroad work accepted notes in payment without reserving therein a lien, his lien, after the expiration of a year, expired.

6. RAILROADS ☞175 — MECHANICS' LIENS — DISCHARGE OF LIEN.

If a note is made payable at a time when the right to enforce a mechanic's lien has been lost by expiration of time, it will be presumed, in absence of agreement to the contrary, that the parties intended to substitute the note for the lien, and it will be deemed that the lien was waived.

7. RAILROADS ☞184 — MECHANICS' LIENS — ENFORCEMENT—RIGHTS OF INTERVENERS.

Where laborer's lien claimant and the intervener in a suit on notes of a railroad waived their lien, or admitted having none, the court had no jurisdiction, and could only dismiss as to them.

8. BILLS AND NOTES ☞537(1) — ACTIONS — QUESTION FOR JURY.

In an action on notes given for work done on a railroad it was for the court, and not the jury, to state whether plaintiff sought recovery on the account or on the notes.

Appeal from District Court, Brazos County; J. C. Scott, Judge.

Action by August Kropp against the Bryan College Interurban Railway Company. Judgment for plaintiff in part, and defendant appeals. Reversed and rendered.

Doremus, Butler & Henderson and Taliaferro & Armstrong, all of Bryan, for appellant. W. C. Davis and J. G. Minkert, both of Bryan, for appellee.

FLY, C. J. This is a suit instituted by appellee to recover on two promissory notes, each due on March 1, 1916, and to foreclose a laborer's lien on the property of appellant, which it was alleged that appellee held under the Constitution and laws of Texas. The appointment of a receiver was also sought. The notes were executed in the name of appellant by O. E. Gammill, who was alleged to have been, at the time, the vice president and general manager of the railway company. His authority to execute the notes was denied by appellant. Appellant filed a general demurrer and a number of special exceptions, which were overruled. The cause was tried with the assistance of a jury, and verdict and judgment rendered in favor of appellee for the amount of the two notes, interest, and attorneys' fees, and for a foreclosure of the laborer's lien. The receivership was denied by the court. Our conclusions as to the facts are given in connection with the consideration of the assignments of error. Two other parties intervened and were given small judgments against appellant.

[1] This suit was filed on February 17, 1916, about 12 days before the maturity of the notes, and the first, second, third, fifth, sixth, and seventh assignments assail the action of the court in refusing to sustain exceptions to the amended petition on the ground that the notes had not matured when the petition was filed. There is no merit in the assignments of error and they are overruled. The declaration on the notes by the amendment after they became due cured the

premature action and appellee had the right to prosecute his suit to judgment. Culbertson v. Cabeen, 29 Tex. 247; Cox v. Reinhardt, 41 Tex. 592; Burns v. True, 5 Tex. Civ. App. 74, 24 S. W. 338; Foley v. Houston Co-Op. Co., 106 S. W. 160. Bringing the action 12 days prematurely could not have injured appellant. It could have demanded the costs that accrued before the debt was due. Dalton v. Rainey, 75 Tex. 516, 13 S. W. 34.

[2] Appellant seems to labor under the impression that there was an attempt to create a lien by the execution of the notes, but that is not the case. The notes were executed merely to preserve the evidence of the debt; the law had created the lien. Rev. St. art. 5640. The law gives an absolute lien to all mechanics, laborers, and operatives who may have performed labor, or worked with tools, teams, or otherwise in the construction, operation, or repair of any railroad, locomotive, car, or other equipment, and to whom wages are due or owing for such work, etc. It is provided in article 5643 that the lien created by article 5640 shall cease to be operative in 12 months after the creation of the lien, if steps are not taken to enforce it. The lien was created by the performance of the labor and not by the execution of the notes, which were merely a recognition of the existence of the debt. Article 6724 has no application to the notes herein sued on. The notes did not create the lien; the law created it. The ninth and tenth assignments of error are overruled.

It could not have injured appellant to allow testimony tending to show that appellant owed appellee and that the notes were given for that debt. The evidence was pertinent and proper. The eleventh, twelfth, and thirteenth assignments of error are overruled.

[3] Appellant had denied the authority of Gammill to issue notes for the company, and it was not improper to allow testimony to the fact that appellant had recognized and ratified other notes executed by Gammill. Appellant had availed itself of the labor of appellee; it had ratified a prior note made to him by Gammill, who was its vice president and general manager. He had absolute control of the railroad, and contracted for all labor, contracted to pay for it, and sometimes did pay for it. His authority to give notes arises from his having assumed and exercised that power in the past, and the company had accepted the labor and received the benefit of it. Wharton v. Bank, 153 S. W. 699; Railway v. Nicholson, 61 Tex. 491.

In the case of Street Railway v. National Bank, 62 Ark. 33, 34 S. W. 89, 31 L. R. A. 535, 54 Am. St. Rep. 282, the Supreme Court of Arkansas holds the corporation liable on a negotiable promissory note executed by its president, when the evidence has shown that the board of directors or by-laws empowered him to execute it, or where by allowing him to do such things he is clothed with apparent authority to so act, or where there has been ratification of the act, or where the corporation has received the proceeds or any benefit from the transaction. This case comes fully within the purview of one or more of the conditions. The general manager was clothed with apparent authority to execute the notes, his act was ratified, and appellant received benefits from it. The fourteenth and fifteenth assignments of error are overruled.

[4] The Constitution of Texas does not provide for a lien in favor of railroad laborers, mechanics, and operatives, but their lien is only statutory, being given by article 5640, Revised Statutes. That statute is separate and distinct from articles 5621 to 5639, and is not subject to the requirements and provisions of those articles in regard to fixing the lien. Under the provisions of articles 5640 to 5643, inclusive, the only requirement is that steps to enforce the lien must be taken within 12 months after the creation of the lien. The lien is created by the performance of the work and the right accrues to the wages. There might be an agreement postponing the time at which the wages should become due and the lien should accrue. The only method of enforcement of the lien indicated by the statute is by a suit for the wages that may be due. Railway v. Berry, 31 Tex. Civ. App. 408, 72 S. W. 1050.

[5] A careful consideration of the evidence convinces this court that all of the debt evidenced by the two notes was due at some time before the notes were executed. Most of it was due, perhaps, quite a length of time before the notes were executed. The notes postponed the time of payment for one year from their date. No mention was made, at the time the notes were given, of any lien on the railroad property, and there is no acknowledgment of the existence of the lien in either of the notes. They were treated as a settlement of all matters between appellant and appellee.

The facts show that in 1912 there was an accounting between appellant and appellee which revealed that there was due him the sum of $1,175. He was given credit on the books for that sum. This was due on work for two previous years. Of course the lien was lost on that sum by the expiration of a year's time, as it was carried as an open account until January, 1914. At that time $300 in cash and a note for $2,000 was given to appellee in settlement of his account, except $235, which was carried as an open account. On March 1, 1915, appellant gave appellee a note for $1,019.65, for amount due outside the amount evidenced by the $2,000 note, and took up the latter note by executing a note for $2,186.65. These are the notes sued on and each was due one year after date; that is, March 1, 1915. At the time those notes were given, the lien had been lost on all of the $2,000 note, and on the $235 open account. How much more of the amount shown by the $1,019.65 note had lost its lien when

the note was given the evidence fails to show.

The evidence as to the taking of all the notes shows that the statutory lien was ignored altogether. That appellee did not rely upon the lien is apparent from the fact that he never mentioned it, and further sought security for his debt. The evidence clearly indicates the destruction of the statutory lien as to all the wages, except a portion of those due for 1914, prior to the time the notes sued on were given, and a clear waiver of the lien as to any part of the wages of 1914 that were still secured by the lien.

[6] It has been held by a number of American courts that where a note is taken for labor performed or materials furnished, which matures before the time in which the lien can be enforced expires, there is no waiver of the lien. On the other hand, if the note is made payable at a time when the right to ·enforce the lien has been lost by the expiration of the limit fixed by statute, it will be presumed, in the absence of any agreement to the contrary, that the parties intended to substitute the note for the lien, and it will be deemed that the lien was waived. Jones on Liens, §§ 1535–1536; Cushwa v. Improvement Association, 45 W. Va. 490, 32 S. E. 259; Green v. Fox, 7 Allen (89 Mass.) 85; Blakeley v. Moshier, 94 Mich. 299, 54 N. W. 54; Loyd v. Guthrie, 131 Ala. 65, 31 South. 506. The extension of the time of payment of the debt for a year put it out of the power of the appellee to lawfully sue for the enforcement of the lien within a year, even if it could be held that the lien did not accrue until March 1, 1915. The agreement is utterly inconsistent with the enforcement of a lien. For a larger portion of the debt the lien had been lost long before the notes were executed, and the year's limitation had begun to run against all that part of the debt due for the year 1914 and up to March 1, 1915.

If there was no intention to waive the lien by accepting the notes as a settlement of the debt, it could and should have been shown.

It may be that appellee felt that his lien would be destroyed at the end of the year, and brought· a premature suit with the idea that he might rescue it; but the waiver had already taken place as to a part of the debt, and the lien had already been lost as to the other, and the status of the lien was fixed. As said by the Supreme Judicial Court of Massachusetts in the cited case of Green v. Fox:

"The rights of the parties were fixed and determined by the legal character of their acts and dealings at the time the notes were given, and cannot be affected or changed by any subsequent act of one of the parties, which was not originally contemplated, and the performance of which depended entirely on the pecuniary ability of the promisee to take up the notes at the time when they matured."

In the case of Loyd v. Guthrie, herein cited, the fact of the existence of the mechan-ic's lien was recited in the note, and the Supreme Court of Alabama held:

"A mechanic's lien is purely of statutory origin. Its character, operation, and extent must be ascertained by the terms of the statute creating and defining it. While every lien of this kind has a contract as its foundation, it is created by the law rather than by the contract of the parties, is analogous to a vendor's lien for the purchase money of land, and is based on a like reason. * * * The mere fact that work and labor are performed and materials furnished for the erection or repair of buildings, or for the construction of other improvements, will not give rise to the lien. The work and labor may be done and the materials furnished on the personal credit of the party contracting for them, and this is often true, and all that is intended. By the express terms of the statute, the lien can come into existence only upon a compliance with its provisions."

It was held in that case that the destruction of the lien by making the loan payable after the time when the terms of the statute could be complied with was only averted by the words in the note: "And a mechanic's lien is held on this building to secure the payment of this note." No such recital is found in the notes herein sued on, and, at the time when the notes could be sued upon, the lien had become inoperative, because more than a year had elapsed from the creation of the lien.

[7] C. L. Eden and G. W. Higgs intervened in the suit asking for foreclosure of a lien on the property of appellant. Eden does not, in his plea of intervention, disclose how much he wants, merely alleging that he had rented a house to an employé of appellant, and that the latter would withhold enough from the laborer's wages to pay the rent. Higgs sought to recover the sum of $75 due for wages, and 20 per cent. damages. Eden stated no cause of action, and he and Higgs afterwards waived their demand for the enforcement of a lien. Eden, of course, never had any lien under his allegations, but, if he had, he waived it. The lien was all that would give the court jurisdiction, and when interveners, in effect, dismissed that part of their claim, the court had no jurisdiction. Railway v. Winder, 26 Tex. Civ. App. 263, 63 S. W. 1043, writ of error refused. The court submitted the issue as to how much appellant owed Eden, although the plea in intervention named no amount, and on their verdict rendered a judgment in favor of Eden for $84. Higgs was given $58. No such judgment should have been rendered.

[8] There is no merit in any of the remaining assignments and they are overruled. None of the special issues requested by appellant should have been given. A number of them were on matters about which the court, and not the jury, should inquire, for instance: "State whether or not plaintiff seeks to recover upon the account or upon the notes." The demurrers might have been with equal propriety submitted to the jury. The evidence conclusively showed that Gammill was general manager when the notes were executed, and that his acts were en-

tered upon the books of the company and ratified by it.

The record in this case discloses that a laborer gave of his time and strength for months to appellant to construct its railway; that the corporation profited by it, and now seeks, on naked technicalities, to defeat a debt, whose correctness is unquestioned. The debt is just and should have been paid long since. The corporation had placed its whole power in the hands of its general manager, his acts had been inscribed in a regular manner upon its books by its legally constituted secretary, it was charged with knowledge of such entries, it received the benefit of the labor of appellee, and it cannot now be heard to deny its liability for the debt.

The matter herein involved, as to the corporation being bound by the acts of the general manager, has been thoroughly considered by this court in a recent decision, and the authorities collated and reviewed in an exhaustive opinion delivered by Associate Justice Swearingen, and a writ of error has been refused by the Supreme Court. Merchants' Ice Co. v. Scott, 186 S. W. 418. That decision is fully decisive of every material point in this case.

The former opinion filed in this cause is withdrawn, the former judgment set aside, and the judgment of the lower court is reversed, and judgment here rendered that the plea of intervention of C. L. Eden and G. W. Higgs be and is hereby dismissed at their cost; that appellee Kropp is not entitled to a laborer's lien, and that appellee recover of and from appellant the sum of $3,206.30, with interest at the rate of 8 per cent. from March 1, 1916, and 10 per cent. attorney's fees, the costs of the lower court being adjudged against appellant and the costs of appeal against appellee, with the exception of those assessed against Eden and Higgs.

Reversed and rendered.