WEBB ET AL. *v.* CITIZENS NATIONAL BANK OF THE CITY OF JEFFERSONVILLE, ET AL.

[No. 9,271.   Filed April 19, 1917.   Rehearing denied June 27, 1917. Petition to transfer withdrawn April 16, 1917.]

1. PLEADING.—*Demurrer.*—*Inferences.*—Upon demurrer all reasonable inferences deducible from the facts alleged may be considered in aid of the pleadings. p. 28.

2. INJUNCTION.—*Complaint.*—*Sufficiency.*—In an action to recover bonds deposited as collateral to secure the payment of a promissory note, allegations in the complaint, *held* sufficient upon demur-

rer to show that plaintiff's agent had authority, upon being informed by payee bank as to the amount due on the note, to make a tender and demand the return of the bonds, and that the amount tendered was the full amount due.  p. 29.

3.  TENDER.—*Sufficiency.—Refusal.—Payment into Court. — Necessity.*—In an action to enjoin payee bank from enforcing any lien against bonds deposited as collateral to secure the payment of a promissory note, the tender of the amount due on the note must be kept good by paying such amount into court.  p. 30.

From Floyd Circuit Court; *John M. Paris,* Judge.

Action by John G. Webb against the Citizens National Bank of the City of Jeffersonville and George H. Holzbog, in which the last-named defendant filed a cross-complaint. From a judgment in favor of the bank, plaintiff and defendant Holzbog appeal. *Affirmed.*

*Charles D. Kelso,* for appellants.

*Stotsenburg & Weathers, Wilmer T. Fox* and *Stannard & Howard,* for appellee.

FELT, C. J.—Appellant John G. Webb brought this suit against appellee, and made the appellant George H. Holzbog a party to answer to his interest in the controversy. Appellant Holzbog filed a cross-complaint against appellee. The trial court sustained a demurrer to the amended complaint, and also to the cross-complaint. Each of the appellants excepted to the rulings of the court, refused to plead over, and elected to stand upon their respective pleadings and the rulings of the court on the several demurrers thereto. Thereupon the court rendered judgment against each of the appellants, from which each has appealed to this court, and assigned separate errors questioning the correctness of each of the aforesaid rulings of the court.

The substance of the amended complaint, omitting

formal and unquestioned averments, is as follows: On June 2, 1905, appellant Webb executed his promissory note for $10,000 payable to appellant Holzbog four months after date at the Citizens National Bank. To secure the payment of such note the maker deposited with the payee twenty-eight certain bonds issued by the Columbus, Delaware and Marion Railway Company of the par value of $14,000. On June 8, 1905, said Holzbog indorsed said note and deposited it and said bonds, together with nine other bonds of the German Savings and Loan Association of the par value of $9,000, with appellee bank, and thereby procured a loan of $10,000 for four months less discount thereon; that the note was renewed from time to time, the last being made on June 4, 1909, but, instead of executing the renewal notes like the original note, said Holzbog joined Webb as a maker thereof, "although in fact and in truth, and with the knowledge of said bank, the said Holzbog was merely surety thereon"; that on November 29, 1913, during regular banking or business hours, before appellee had foreclosed or otherwise enforced its lien against said bonds, or either of them, "Mr. George H. Voight for and upon the behalf of said defendant, Holzbog, requested" appellee to furnish him on behalf of said Holzbog, the amount due on the last renewal note aforesaid, and in compliance with such request appellee furnished a statement in writing purporting to show the amount due on said note on December 1, 1913, and stated such amount to be $9,409.33; that thereupon said Voigt, for and on behalf of said Holzbog for the purpose of paying said note and discharging said bonds from the lien of said debt, tendered appellee "in full payment of the amount so stated by

the said defendant bank to be due it at said time on said note and necessary to discharge said bonds from said lien thereon'' the sum of $9,409.33 in lawful money of the United States of America, ''and at the same time and place demanded that said defendant bank surrender said bonds to him, the said George H. Voigt, as the agent of said defendant George H. Holzbog, but that the defendant bank did neither accept said money so tendered to it as aforesaid nor surrender said bonds, but in lieu thereof delivered to said George H. Voigt the following, to wit:

"Jeffersonville, Indiana, Nov. 29, 1913.

"The Citizens Bank of Jeffersonville, Indiana, hereby acknowledges a tender of Nine Thousand Five Hundred Dollars, in lawful money, made to it this day by George H. Voigt for George H. Holzbog, who demanded the delivery to him of the Webb-Holzbog note of Ten Thousand Dollars, subject to credits, together with the collateral on same, being fourteen thousand dollars C., D. & M. Ry. Five Per Cent Consolidated Bonds, and, also, demanded the delivery of Seven Thousand Dollars German Savings and Loan Association bonds, in the possession of said bank, which demand and tender was refused by said bank.

"(Signed)   Citizens National Bank,
        John C. Zulauf, President."

*   *   *

"Plaintiff further avers that upon the said tender of the said amount due said defendant bank and its refusal to accept the same, the lien of said defendant bank upon and against said bonds was then and there and thereby lost, canceled, and extinguished and that,

in consequence thereof, the said bonds are not now subject to the said lien of the said defendant bank.''

The prayer was for a temporary injunction to enjoin appellee from in any way enforcing any claim or lien against the twenty-eight railroad bonds until the final hearing, and that upon such hearing the court find and decree that by the aforesaid tender appellee's lien thereon was extinguished; that appellee be ordered to deliver said bonds to appellant Webb freed and discharged from any claim thereto or lien thereon by the defendants; that said bank be perpetually enjoined from asserting any claim to .or enforcing any lien upon such bonds, and plaintiff be granted all proper relief in the premises.

Most of the facts alleged in the cross-complaint of Holzbog relating to the several transactions are identical with those of the complaint, and, without repeating them, we shall consider them as a part of the material averments of the cross-complaint.

It is therein alleged that contemporaneously with the deposit of such bonds as collateral security, certain written memoranda were executed as follows:

''Jeffersonville, Indiana, June 8, 1905.

''Whereas, George H. Holzbog has offered for discount at the Citizens National Bank of Jeffersonville, Indiana, the promissory note of John G. Webb, dated June 2nd, 1905, for Ten Thousand Dollars, payable four months after date, with Fourteen Thousand Dollars of Columbus, Delaware & Marion Railway Company bonds, numbered 2689 to 2716, inclusive, attached as collateral; and

''Whereas, said Holzbog has endorsed said note, guaranteeing payment thereof.

"Now, Therefore, said Holzbog further pledges, to secure payment of said note or any renewal thereof, including interest, and on the same terms and conditions as said railroad bonds are pledged, Nine Thousand Dollars of the bonds of the German Savings and Loan Association of Jeffersonville, Indiana, and numbered 931, 940, 941, 943, 944, 942, 915, 933, and 910, at One Thousand Dollars each, said latter bonds being the property of said Holzbog and to be delivered to said Holzbog upon full payment of said note and interest as above pledged.

"(Signed) George H. Holzbog."

\* \* \*

Indorsed across the face of it by the president of the Citizens National Bank is the following:

"Copy of the collateral agreement of George H. Holzbog attached to George G. Webb's note dated June 2nd, 1905, for Ten Thousand Dollars and discounted with the Citizens National Bank, Jeffersonville, Indiana, June 8th, 1905.

"(Signed) John C. Zulauf, President."

It is also alleged that on the 14th, 15th and 17th days of November, 1913, appellee bank gave public notice in the newspapers, and elsewhere, in the city of Jeffersonville, that on December 1, 1913, at the door of the courthouse in said city, it would sell said twenty-eight railway bonds; that cross-complainant signed the note as surety, and not as principal, and that upon tender of the full amount due thereon and the refusal of the bank to accept said tender, he was discharged from all liability as such surety and was entitled to the aforesaid collateral; that the bank

still retains said bonds and claims to have a lien thereon, and that cross-complainant is liable on said note. Prayer that appellee be enjoined from enforcing collection of the note from Holzbog and be required to return to him the collateral deposited to secure payment of the note aforesaid.

Numerous statements are made in the memoranda accompanying the aforesaid pleadings to show that the same are insufficient to state a cause of action.

It is charged that the complaint is bad because it fails to show that George H. Voigt had authority from either Webb or Holzbog to make the tender or receive from appellee the bonds held as collateral security; that it is not shown that the tender was unconditional, but the averments show that it was a conditional tender only, depending on the delivery of the bonds; that the tender has not been kept good by paying the amount thereof into court for the benefit and use of appellee; that the matters alleged in the complaint are not such as should be inquired into by a court of equity; that it is not shown that neither of said appellants was not otherwise indebted to appellee than as evidenced by said renewal note, at the time of the alleged tender; that the averments fail to show that the amount tendered was the full amount due appellee at the time the tender was made.

The points of the memoranda in reference to the cross-complaint are in substance identical with the foregoing.

Under numerous decisions of our Supreme Court following the case of *Domestic Block Coal Co.*

1.  v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99, all reasonable inferences deducible from the facts alleged may be considered in aid of pleadings.

In the light of these decisions we think the averments of the complaint are sufficient to show the authority of Mr. Voigt as agent of Holzbog in making the tender and demanding the bonds; also that the amount tendered was the full amount due on the note executed by appellants; that the tender so made was sufficient to make a *prima facie* case against appellee in so far as the amount of the tender was involved, and also as to its duty to return the bonds held as collateral security for the note in question, upon payment of the note, if the effect of the tender was not destroyed by the conditions imposed.

A fair and reasonable construction of the averments of the complaint indicate that Mr. Voigt tendered the full amount of money appellee's statement showed to be necessary to pay in full the last renewal note aforesaid, and that concurrently with the surrender of the money so tendered he demanded the delivery to him of the note and the bonds pledged as collateral security therefor.

In a recent case this court held that the general rule is well established that a tender, to be sufficient, must be unconditional, but recognized certain exceptions to the general rule, and said: "A more accurate and comprehensive statement of the general rule, perhaps, would be that the tender to be good must not be accompanied by any condition to which the party to whom it is made has any legal right to object, and is not invalidated by being coupled with a condition which the party making it has the right to impose and to which the other party cannot reasonably object." *Newman* v. *Horner* (1914), 55 Ind. App. 298, 302, 103 N. E. 820; *Jordan* v. *Johnson* (1912), 50 Ind. App. 213, 218, 98 N. E. 143.

There is authority outside our own state for applying the foregoing rule in cases like the one under consideration, on the theory that payment of the note or lawful tender of the full amount due thereon is performance of the contract for which the bonds were pledged as collateral security, and *prima facie* ends the right of the holder of such securities to retain them; that payment of the note or such lawful tender, and the surrender of such securities, may be treated as simultaneous or concurrent acts, since under such conditions the holder of such securities has no reasonable ground for objecting to surrendering them. *New York Assets, etc., Co.* v. *McKinnon* (1913), 209 Fed. 791, 126 C. C. A. 515; *Halpin* v. *Phenix Ins. Co.* (1890), 118 N. Y. 165, 175, 23 N. E. 482; *Mitchell* v. *Roberts* (1883), (C. C.) 17 Fed. 776, 780; *Cass* v. *Higenbotam* (1885), 100 N. Y. 248, 253, 3 N. E. 189; *Strafford* v. *Welch* (1879), 59 N. H. 46; 28 Am. and Eng. Ency. Law 31; 38 Cyc 152-154.

The precise question whether a demand for the surrender of collaterals pledged to secure the payment of a note will vitiate an otherwise lawful tender of the amount due on such note does not seem to have been decided in this state, but there are decisions which by analogy tend to show that such demand would be treated as a condition which cannot lawfully be imposed in making a tender. *Storey* v. *Krewson* (1876), 55 Ind. 397, 399, 23 Am. Rep. 668; *Morrison* v. *Jacoby* (1888), 114 Ind. 84, 92, 14 N. E. 546, 15 N. E. 806.

However, the conclusion we have reached on other questions renders it unnecessary to decide the question at this time. Where a tender is made for

3.   the amount of a debt for which securities are held, and the tender is refused, there is author-

ity for holding that such tender of the full amount due will operate to cancel or release the lien on such securities, and under certain conditions may be taken advantage of by the party entitled to the securities without keeping the tender good by paying the amount into court. The decisions are conflicting as to the effect of such tender and refusal where the tender is made after default in payment of the debt at maturity. *McClellan* v. *Coffin* (1884), 93 Ind. 456, 463; *Parker* v. *Beasley* (1895), 116 N. C. 1, 21 S. E. 955, 33 L. R. A. 231, and notes; *Mitchell* v. *Roberts, supra; Cass* v. *Higenbotam, supra; Nelson* v. *Loder* (1892), 132 N. Y. 288, 30 N. E. 369, 370; *Weeks* v. *Baker* (1890), 152 Mass. 20, 22, 24 N. E. 905; 38 Cyc 158; 28 Am. and Eng. Ency. Law 39; 2 Jones, Mortgages §893.

However, the decided weight of authority, if not the universal rule, is that the foregoing proposition has no application where the party seeking to obtain its benefit comes into a court of equity and demands affirmative relief. In such instances the familiar rule is applied that he who seeks the aid of equity must himself do equity, and, before such party can obtain an affirmative decree in his favor by virtue of a tender of the amount of the debt, he is required to show that he has brought the amount tendered into court for the benefit of his adversary to the end that no possible question may thereafter be raised, or litigation result, over the right to the money so tendered. *Morrison* v. *Jacoby, supra; Lancaster* v. *DuHadway* (1884), 97 Ind. 565, 566; *Bundy* v. *Summerland* (1895), 142 Ind. 92, 94, 41 N. E. 322; *Smith* v. *Felton* (1882), 85 Ind. 223, 224; *Hazelett* v. *Butler University* (1882), 84 Ind. 230, 237; *Wilson* v. *McVey* (1882), 83

Ind. 108; *McWhinney* v. *Brinker* (1878), 64 Ind. 360, 364; *Halpin* v. *Phenix Ins. Co., supra; Breunich* v. *Weselman* (1885), 100 N. Y. 609, 610, 2 N. E. 385; *Tuthill* v. *Morris* (1880), 81 N. Y. 94, 99; *Cowles* v. *Marble* (1877), 37 Mich. 158, 161; *O'Riley* v. *Suver* (1873), 70 Ill. 85, 87; *Nelson* v. *Loder, supra;* 2 Jones, Mortgages §§892, 893.

In *Morrison* v. *Jacoby, supra,* the Supreme Court said: "The amount due the defendants is due unconditionally, is liquidated, and is a claim which equity and law made it the duty of the plaintiffs to pay. In such a case money ought to be paid into court, so that the defendant may take it out if he chooses. It is not equitable that the plaintiffs, by merely offering to pay what they long before should have paid, should be allowed to keep the money from the defendants until a final decree puts an end to the controversy. Surely, the plaintiff asking equity in such a case must do more than make a mere offer to pay only in the event that it is so ordered, or after the lien is judicially declared. It is no hardship upon him to pay the money into court, while his failure to do so might work injury to the defendant. It would, at all events, abridge the right of the defendant to elect to take it out. * * * It is not easy to perceive why, in such a case as this, there should be any distinction between actions at law and suits in equity. We think there is really none, and what was said of a party in a somewhat similar case may be here appropriately said of the appellees: 'If he pretends to avail himself of the plea of tender in equity, because he could not make it at law, he ought to be held to as great strictness as he would be held to at law.' * * * The argument proceeds upon the theory that the equity rule that an offer

without an actual tender is sufficient, governs the case, and we are referred to the cases which hold that in suits for specific performance a strict tender is not necessary. These authorities are, it is manifest, not in point in an action like this, where the plaintiff asks to be relieved from a demand which the law imperatively made it his duty to pay, and which another had paid for him. * * * The principle declared in the case from which we quote is a sound one. It is so, because a tender properly made stops all interest, and, certainly, he who makes it ought not to be allowed to retain the money through a course of litigation and still be relieved from the payment of interest. It is so, because a tender where a sum is unconditionally due is only good when the money is brought into court.''

In *Lancaster* v. *DuHadway, supra,* the Supreme Court said: ''The appellee insists that the complaint was insufficient, because the appellants do not aver that they bring the money tendered into court for him, or offer to pay it upon obtaining the relief demanded. This objection is well taken. The complaint is an application to a court of equity to cancel a certificate of purchase and to enjoin the auditor from executing a deed to the purchaser. This invokes the equitable aid of the court, and it is well settled that a court of equity will not extend its aid to a party who does not himself do equity. * * * This rule requires a party who seeks the equitable aid of a court, in order to protect himself against his adversary in such case as this, to bring the money due him into court, so that he can take it when the relief is granted. The tender of the money does not pay the debt, and if the relief were granted without requiring its payment, the court

would deprive the purchaser of his only protection by destroying the muniments of his title while the money due him remains unpaid. This a court of equity will not do. * * * The money due is not paid. Though it was tendered, and its payment refused, it still remains unpaid, and so long as it remains unpaid, and the appellants do not offer to pay, a court of equity will not assist them. If this is nothing more than an application to cancel the certificate and to enjoin the execution of the deed, still the application is to a court of equity to obtain its aid in order to prevent the purchaser from enforcing his claim through these muniments of his title. It is therefore immaterial whether the complaint is regarded as a bill to redeem or to cancel the certificate and enjoin the execution of the deed. In either case the same principle is involved, and the same rules control.''

In *Breunich* v. *Weselman, supra,* the New York Court of Appeals said: ''It has been held that an offer to pay the amount due on the mortgage, either at the law day or thereafter before foreclosure, will extinguish the security, although the tender is not kept good and the money brought into court. * * * But that rule does not apply where the affirmative relief of a cancellation of the security is sought and granted, as was the case here.''

In *Tuthill* v. *Morris, supra,* the same court, in speaking of the effect of a tender not brought into court, said: ''We are clearly of opinion that it should be kept good in order to entitle the mortgagor to the affirmative relief which he seeks * * *. A party coming into equity for affirmative relief must himself do equity, * * *.''

The foregoing propositions and authorities are de-

cisive of the case at bar, and compel the conclusion that the trial court did not err in either of the rulings complained of by appellants.

Judgment affirmed.